GENERAL MOTORS CORPORATION v PUBLIC SERVICE
COMMISSION No 1

Docket Nos. 97858, 97860. Submitted June 7, 1988, at Lansing.
Decided September 21, 1988.

In the early 1970s, when natural gas was scarce and deliveries of
it were unpredictable, Consumers Power Company built a
controversial plant in Marysville to produce synthetic natural
gas. The building and operation of the plant was controversial
because it cost more to produce the synthetic natural gas than
to obtain natural gas from other sources. Consumers obtained
feedstocks, from which it produced the synthetic natural gas,
through allocations granted by the United States Department
of Energy. On March 13, 1978, Consumers applied to the Public
Service Commission for a general increase in its rates for the
sale of natural gas. Psc Case No. U-5732. General Motors
Corporation and the Attorney General (appellants) opposed the
rate increase. Hearings were held and the record was closed on
September 27, 1978. In March, 1979, before the psc issued its
order in the case, Consumers ceased production of synthetic
natural gas at Marysville. On March 29, 1979, General Motors
sought to reopen the record in U-5732 for the taking of further
evidence relating to Consumers' decision not to operate the
Marysville plant. The request was denied. In April, 1979, the
Department of Energy cancelled Consumers' remaining alloca-
tion of feedstock for the Marysville plant for the period ending
June 30, 1979. However, Consumers still had an application for
feedstock allocation pending before the Department of Energy
for the period commencing July 1, 1979. Appellants again
sought to reopen the record for the purpose of taking new
evidence on the issue whether the Marysville plant was "used
and useful" and to relitigate the proper treatment of various
Marysville costs. The motions to reopen were again denied. On
June 27, 1979, the psc issued its final order in U-5732, granting

REFERENCES

Am Jur 2d, Administrative Law § 701; Public Utilities §§ 138-188,
192, 240-243, 276-291.

Amount paid by public utility to affiliate for goods or services as
includible in utility's rate base and operating expenses in rate
proceeding. 16 ALR4th 454.

Consumers an annualized rate increase of $29,162,000. The commission found that Marysville production would not be needed in the next several years, recognized the net Marysville investment in the rate base, and excluded Marysville operation and management expense from working capital. Operating and depreciation expenses for Marysville were included in cost of service. Appellants appealed to the Ingham Circuit Court, which affirmed on December 23, 1986, Michael G. Harrison, J. General Motors and the Attorney General filed separate appeals, which have been consolidated. The appeals raise issues concerning whether Consumers' investment in and expenses relative to the Marysville plant should have been included in determining the rate base.

The Court of Appeals *held:*

1. A party attacking an order of the PSC has the burden of showing by clear and satisfactory evidence that the order complained of is unlawful or unreasonable. Appellants have failed to carry their burden of showing by clear and satisfactory evidence that the order at issue here was unlawful or unreasonable.

2. General Motors' argument that the PSC erred in denying its motion to reopen the record to consider important new evidence is rejected. The PSC had ample evidence, and the alleged new evidence was not significant. General Motors' contention that because there was no present need for the Marysville plant, expenses associated with it should not have been included in the determination of the rate base is rejected because of the projected future need for the plant.

3. The circuit court did not err in rejecting in February, 1986, the Attorney General's request to allow him to present additional evidence demonstrating that the Marysville plant had not been operated since March, 1979, that it would never be operated, and that Consumers owed its customers refunds. The offer of evidence was untimely and inconsistent with the orderly review of administrative appeals.

Affirmed.

1. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — RATES.

The Public Service Commission is given broad discretionary power to set just and reasonable rates for privately owned public utilities and is specifically vested with authority to regulate the rates of gas utilities; all rates fixed by the PSC are deemed prima facie lawful and reasonable, and a party attacking an order of the PSC has the burden of showing by clear and satisfactory evidence that the order complained of is unlawful or unreasonable (MCL 462.25; MSA 22.44).

2. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — APPEAL.

A court reviewing an order of the Public Service Commission is to give due deference to the commission's administrative expertise and is not to substitute its judgment for that of the commission.

3. PUBLIC UTILITIES — RETURN ON INVESTMENTS.

A utility is entitled to a return on the value of the property which it employs for the convenience of the public.

4. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — RATES — INCLUSION OF COSTS OF IDLE PLANTS.

The Public Service Commission did not err in finding that the costs associated with the operation of a Consumers Power Company plant used to produce synthetic natural gas should be included in calculating Consumers' natural gas rate base where, although the plant was not currently operating, it had been used and useful in the past and evidence indicated that it would be needed again for future production.

5. APPEAL — EVIDENCE — TIMELINESS.

A court reviewing a decision of the Public Service Commission did not abuse its discretion in refusing to allow, years after the record was closed and the PSC had rendered its decision in the case, a party to present additional evidence concerning the operation of a public utility plant on the basis that the offer of evidence was untimely and inconsistent with the orderly review of administrative appeals.

*Hill, Lewis, Adams, Goodrich & Tait* (by *Roderick S. Coy* and *Timothy P. Collins*), for General Motors Corporation in 97858.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Hugh B. Anderson,* Assistant Attorney General, for Attorney General in 97860.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Don L. Keskey, Henry J. Boynton, Elizabeth R. Schwartz,* and *James A. Ault,* Assistant Attorneys General, for Public Service Commission in 97858, 97860.

*David A. Mikelonis,* and *Loomis, Ewert, Ederer,*

*Parsley, Davis & Gotting* (by *George W. Loomis, Michael G. Oliva,* and *Ronald W. Bloomberg*), for Consumers Power Company in 97860.

Before: DANHOF, C.J., and SAWYER and D. R. FREEMAN,* JJ.

PER CURIAM. Plaintiffs, the Attorney General and General Motors Corporation, appeal as of right from a December 23, 1986, opinion and order of Ingham Circuit Judge Michael G. Harrison. That opinion and order affirmed a June 27, 1979, order of defendant Public Service Commission in PSC Docket No. U-5732. The PSC granted defendant Consumers Power Company a natural gas rate increase. Plaintiffs raise issues concerning whether Consumers' Marysville plant should have been included in the rate base. We affirm.

Consumers provides natural gas service to customers in Michigan. Consumers' Marysville plant produced synthetic natural gas from feedstocks (light hydrocarbon liquids). See *Consumers Power Co v Federal Energy Administration,* 413 F Supp 1007, 1015 (ED Mich, 1976), modified 413 F Supp 1024 (ED Mich, 1976). Consumers obtained the feedstocks through allocations granted by the United States Department of Energy. Consumers built the plant in the early 1970s when natural gas was scarce and deliveries of it were unpredictable. The plant was controversial because the synthetic natural gas which it produced was more expensive than gas which was obtained from other sources.

This case began on March 13, 1978, when Consumers applied for a gas rate increase. Hearings were held. The record was finally closed on September 27, 1978. In March, 1979, the Marysville

---

* Circuit judge, sitting on the Court of Appeals by assignment.

plant stopped producing synthetic natural gas. In April, 1979, the Department of Energy cancelled the Marysville plant's feedstock allocation for the period ending June 30, 1979. However, Consumers still had a feedstock allocation application pending before the Department of Energy for the period beginning July 1, 1979.

On June 27, 1979, the PSC issued an order granting Consumers a $29,162,000 annual rate increase to correct a revenue deficiency of that amount. The lower court affirmed the rate increase. We note that these appeals are two of several from the "Marysville cases." The PSC reopened the rate-making proceeding after Consumers notified it that the Marysville plant would be mothballed. On October 2, 1979, the PSC ordered an immediate rate reduction of $23,914,000 per year.

The PSC is given broad discretionary power to set just and reasonable rates for privately owned public utilities. It is specifically vested with authority to regulate the rates of gas utilities. *Attorney General v PSC,* 118 Mich App 311, 315-316; 324 NW2d 628 (1982), lv den 417 Mich 1003 (1983). All rates fixed by the PSC are deemed prima facie lawful and reasonable. MCL 462.25; MSA 22.44; *Attorney General v PSC No 1,* 133 Mich App 719, 725; 349 NW2d 539 (1984), lv den 422 Mich 910 (1985).

The party attacking a PSC order has the burden of showing by clear and satisfactory evidence that the order complained of is unlawful or unreasonable. MCL 462.26; MSA 22.45; *Attorney General v PSC No 1, supra,* p 725; *The Detroit Edison Co v PSC,* 127 Mich App 499, 507; 342 NW2d 273 (1983), lv den 419 Mich 867 (1984). The standard of judicial review of a PSC decision is whether that decision is lawful and supported by competent, material, and substantial evidence on the whole

record. Const 1963, art 6, § 28; *Building Owners &
Managers Ass'n of Metropolitan Detroit v PSC,*
131 Mich App 504, 516; 346 NW2d 581 (1984), aff'd
424 Mich 494; 383 NW2d 72 (1986). The reviewing
court is to give due deference to the PSC's adminis-
trative expertise and is not to substitute its judg-
ment for that of the commission. *Id.,* p 517.

"On matters involving the exercise of good com-
mon sense and judgment only, the determination
of the commission must be held to be final unless
such determination in its application results in the
establishment by 'clear and convincing' proof of a
rate so low as to be confiscatory or so high as to be
oppressive. What return a public utility shall be
entitled to earn upon its invested capital, and
what items shall be considered as properly going
to make up the sum total of that invested capital,
are questions of fact for the determination of the
commission, and their conclusions thereon, upon
which the rate is based, are unassailable unless, as
a necessary result, it can be affirmatively asserted
that the resultant rate is unreasonable and unlaw-
ful.

"Between the point where a rate may be said to
be so low as to be confiscatory and the point where
it must be said to be so high as to be oppressive
upon the public, there is a 'twilight zone' within
which the judgment of the commission may oper-
ate without judicial interference. Assume that the
commission, in determining the amount of the
capital invested, allows as an element of the sum
an amount which the court, if charged with the
initial duty of determination, might find to be
excessive or inadequate; or, assume that the com-
mission, in the exercise of its best judgment, per-
mitted a rate of return upon the invested capital
higher or lower than the court, under like circum-
stances, might believe to be proper—nevertheless,
the court would not be warranted in interfering
unless the rate, as established, was clearly unrea-
sonable and unlawful." [*Michigan Bell Telephone*

*Co v PSC,* 332 Mich 7, 26-27; 50 NW2d 826 (1952), quoting *Detroit v Michigan Railroad Comm,* 209 Mich 395, 433-434; 177 NW 306 (1920).]

Plaintiffs claim that the lower court erred in affirming the PSC decision to include the Marysville plant in the rate base because the plant stopped producing synthetic natural gas in March, 1979, and was not useful. The lower court approached this issue by stating that it would not review the PSC decision from hindsight, but would determine whether the decision was lawful and reasonable when it was rendered. We agree. The PSC adopted the test period of July 31, 1976, to July 31, 1977, which all parties utilized. The PSC decision notes that all parties offered out-of-period adjustments so that the test period might reflect current conditions more accurately. When the PSC rendered its decision, the Marysville plant was not producing synthetic natural gas and apparently would not be needed for the next several years because natural gas was available from other sources. However, evidence indicated that the "supply bubble" would end, causing a future need for the Marysville plant to produce synthetic natural gas. A utility is entitled to a return on the value of the property which it employs for the convenience of the public. *Michigan Bell Telephone Co,* p 38. Plaintiffs have failed to carry their burden of showing by clear and satisfactory evidence that the PSC order was unlawful or unreasonable.

We turn to General Motors' claim that the lower court erred in affirming the PSC's June 27, 1979, order because the PSC erroneously denied General Motors' motion to reopen the record to consider important new evidence that the Marysville plant was not used and useful. The PSC had ample

evidence on these matters. General Motors has failed to convince us that the alleged new evidence was significant. General Motors argues that if the record had been reopened, then the PSC could have been presented with additional facts supporting its finding that the Marysville plant would not be needed for several years. General Motors agrees with this PSC finding. General Motors then argues that because there was no present need for the plant, it should not have been included in the rate base. As we discussed above, we reject this argument because of the projected future need for the Marysville plant.

Finally, we consider the Attorney General's claim that the lower court erred, in a February 6, 1986, order, by refusing to permit him to present additional evidence demonstrating that the Marysville plant had not been operated since March of 1979, would never be operated, and that Consumers owed its customers refunds. The lower court rejected evidence that the Attorney General offered in 1985, years after the record was closed and the PSC rendered its decision in this case. The evidence concerned matters which arose after the record was closed. The lower court did not abuse its discretion in rejecting the offer of evidence as untimely and inconsistent with the orderly review of administrative appeals.

Affirmed.