ATTORNEY GENERAL v PUBLIC SERVICE COMMISSION

Docket No. 97859. Submitted June 7, 1988, at Lansing. Decided September 23, 1988.

On April 14, 1978, Consumers Power Company petitioned the Public Service Commission to make refunds of overrecoveries and to amend its purchased gas adjustment (PGA) clause in response to decreased production at Consumers' Marysville plant. Psc Case No. U-5759. The PSC split the case into two phases. Phase I determined the amount of refund which Consumers owed its customers because of overrecovery from its former PGA clause. Phase II determined the appropriate PGA clause to implement. Proceedings in Phase I resulted in a settlement agreement providing for a refund of $22,900,363, plus interest. The agreement was approved by the PSC, and no appeal has been taken from that order. Proceedings in Phase II resulted in the PSC's opinion and order of August 21, 1979, finding that feedstock costs of the Marysville plant were properly included in the PGA clause. The PSC amended the PGA clause to more accurately account for the widely varying levels of production at Marysville by ordering that feedstock costs not be calculated based on a twelve-month rolling average but on the basis of actual feedstock costs incurred in the month prior to the effective date of the PGA factor. The PSC also authorized procedures for future annual reconciliations of PGA clause revenues with associated expenses; held that synthetic natural gas is "purchased gas" within the meaning of MCL 460.6a; MSA 22.13(6a); held that the cost of Marysville synthetic natural gas is not and was not excessive; and refused to order refunds of prior collections of feedstock costs through PGAs. The Attorney General appealed to the Ingham Circuit Court, which, on December 23, 1986, affirmed the August 21, 1979, order of the PSC, Michael G. Harrison, J. The Attorney General appealed, contending that the PSC erred in holding that liquid petroleum feedstocks used to manufacture synthetic natural

REFERENCES

Am Jur 2d, Public Utilities §§ 240-243, 276-291.

Amount paid by public utility to affiliate for goods or services as includible in utility's rate base and operating expenses in rate proceeding. 16 ALR4th 454.

gas at Consumers' Marysville plant constitute "purchased gas" within the meaning of MCL 460.6a; MSA 22.13(6a) and in holding that the feedstock cost of manufacturing gas at Marysville in 1978 and 1979 was not excessive. For these reasons, the Attorney General claims that the circuit court erred in affirming the August 21, 1979, order of the PSC.

The Court of Appeals *held:*

1. The Attorney General provided no citation of authority nor other cogent reason to differentiate between types of purchased gas on the basis of their physical states. The Attorney General's claim that the PSC erred in holding the liquid petroleum feedstocks constituted purchased gas within the meaning of the statute therefore is deficient and is rejected.

2. The Attorney General's contention that the feedstock cost was excessive because it was greater than the cost of other available natural gas is rejected because the Marysville plant's purpose was to produce synthetic natural gas when sufficient supplies of natural gas were unavailable. The Marysville plant was both used and useful in the 1970s and evidence indicates there will be a future need for it to produce synthetic natural gas.

3. The Attorney General has failed to carry his burden of showing by clear and satisfactory evidence that the PSC's August 21, 1979, order is unlawful or unreasonable.

Affirmed.

1. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — RATES.

The Public Service Commission is given broad discretionary power to set just and reasonable rates for privately owned public utilities and is specifically vested with authority to regulate the rates of gas utilities; all rates fixed by the PSC are deemed prima facie lawful and reasonable, and a party attacking an order of the PSC has the burden of showing by clear and satisfactory evidence that the order complained of is unlawful or unreasonable (MCL 462.25; MSA 22.44).

2. STATUTES — ADMINISTRATIVE LAW — JUDICIAL CONSTRUCTION.

The construction given to a statute by those charged with executing it is entitled to respectful consideration and should not be overruled without cogent reasons.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Hugh B. Anderson,* Assistant Attorney General, for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, and *Don L. Keskey, Henry J. Boynton, Elizabeth R. Schwartz,* and *James A. Ault,* Assistant Attorneys General, for Public Service Commission.

*David A. Mikelonis* and *Loomis, Ewert, Ederer, Parsley, Davis & Gotting* (by *George W. Loomis, Michael G. Oliva,* and *Ronald W. Bloomberg*), for Consumers Power Company.

Before: DANHOF, C.J., and SAWYER and D. R. FREEMAN,* JJ.

PER CURIAM. Plaintiff appeals as of right from a December 23, 1986, opinion and order of Ingham Circuit Judge Michael G. Harrison. That opinion and order affirmed an August 23, 1979, order of defendant Public Service Commission in Docket No. U-5759. The PSC allowed defendant Consumers Power Company to include feedstock costs of Consumers' Marysville synthetic natural gas plant in Consumers' purchased gas adjustment (PGA) clause. We affirm.

Consumers provides natural gas service to customers in Michigan. Consumers' Marysville plant produced synthetic natural gas from feedstocks (light hydrocarbon liquids). See *Consumers Power Co v Federal Energy Administration,* 413 F Supp 1007, 1015 (ED Mich, 1976), modified 413 F Supp 1024 (ED Mich, 1976). Consumers built the plant in the early 1970s when natural gas was scarce and deliveries of it were unpredictable. In 1979, when natural gas supplies were more plentiful and dependable, Consumers phased out and then mothballed the plant.

This case began on April 14, 1978, when Consumers petitioned the PSC to amend its PGA clause

---

* Circuit judge, sitting on the Court of Appeals by assignment.

in response to decreased production at Marysville. The PSC split this case into two phases. Phase I determined the amount of refund which Consumers owed its customers because of overrecovery from its former PGA clause. This appeal concerns Phase II, which was to determine the appropriate PGA clause.

The PSC is given broad discretionary power to set just and reasonable rates for privately owned public utilities. It is specifically vested with authority to regulate the rates of gas utilities. *Attorney General v PSC,* 118 Mich App 311, 315-316; 324 NW2d 628 (1982), lv den 417 Mich 1003 (1983). All rates fixed by the commission are deemed prima facie lawful and reasonable. MCL 462.25; MSA 22.44; *Attorney General v PSC No 1,* 133 Mich App 719, 725; 349 NW2d 539 (1984), lv den 422 Mich 910 (1985).

The party attacking a PSC order has the burden of showing by clear and satisfactory evidence that the order complained of is unlawful or unreasonable. MCL 462.26; MSA 22.45; *Attorney General v PSC No 1, supra,* p 725; *The Detroit Edison Co v PSC,* 127 Mich App 499, 507; 342 NW2d 273 (1983), lv den 419 Mich 867 (1984). The standard of judicial review of a PSC decision is whether that decision is lawful and supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *Building Owners & Managers Ass'n of Metropolitan Detroit v PSC,* 131 Mich App 504, 516; 346 NW2d 581 (1984), aff'd 424 Mich 494; 383 NW2d 72 (1986). The reviewing court is to give due deference to the PSC's administrative expertise and is not to substitute its judgment for that of the commission. *Id.,* p 517.

Plaintiff's first claim is that the PSC erred in holding that liquid petroleum feedstocks, which were used to manufacture synthetic natural gas at

Consumers' Marysville plant, constituted "purchased gas" within the meaning of MCL 460.6a; MSA 22.13(6a), which authorized PGA clauses. Plaintiff states that Marysville feedstocks were not "gas" because they were liquid at normal atmospheric pressure and temperature. Plaintiff further states that the Marysville plant's synthetic natural gas was manufactured gas, not "purchased gas." Plaintiff contends that the PSC improperly expanded the PGA clause to be a purchased oil adjustment clause or a manufactured gas adjustment clause.

The PSC stated:

> It should be noted that the Legislature's intent to permit "gas" costs to be passed through a PGA clause has required the Commission to deal with a variety of methods or technologies of producing gas supply. For instance, one utility meets its peak needs by mixing propane with air to produce a gas and injecting this mixture into the gas supply. The propane is in liquid form before mixing with air but is in a gaseous state after mixing. Yet, clearly, liquid propane is transformed into gas which is used by utility customers and is indistinguishable, for their purposes, from natural gas. Liquefied natural gas is another new method of providing gas service. This technology involves the liquefaction of natural gas, shipment to the United States from such distant origins as Indonesia and Algeria, re-gasification in onshore facilities and shipment through pipelines to the point of use.

> Both propane and liquefied natural gas are liquid petroleum products and require mechanical facilities to be converted into a gas for use by customers. Yet both of these sources of gas are includable in PGAS.

> To disallow the inclusion of propane or liquefied natural gas in a PGA clause simply because of their liquid state or the fact that mechanical facilities are required to convert these liquids into gaseous

form would lead to an absurd result which would defeat the original legislative purpose in allowing use of a PGA clause.

The lower court noted that the construction given to a statute by those charged with executing it is entitled to respectful consideration and should not be overruled without cogent reasons. See *Magreta v Ambassador Steel Co (On Reh)*, 380 Mich 513, 519; 158 NW2d 473 (1968). The lower court rejected plaintiff's argument because he provided no citation of authority nor other cogent reason to differentiate between types of purchased gas based on their physical states. We find his appellate argument similarly deficient.

Plaintiff's second claim is that the PSC erred in holding that the cost of Marysville feedstocks was not excessive. Plaintiff argued before the PSC that the cost of gas produced at Marysville should be excluded from the PGA clause because its cost was excessive. The PSC stated:

> Although Marysville gas is Applicant's most expensive source of gas, this by itself does not constitute good nor legal reason for excluding Marysville feedstock costs from passing through Applicant's PGA clause. There is nothing on this record to indicate that gas could be produced at Marysville for less cost than is presently the case or is predicted for the future. In order to justify, on the basis of excessive costs, the exclusion of Marysville costs from Applicant's PGA clause, there should be a showing on this record that the cost of such feedstock should be lower than is presently the case or is the case predicted for the future. For these reasons, the cost of gas produced at Marysville is not excessive.

Plaintiff contends that the feedstock cost was excessive because it was greater than the cost of

other available natural gas. We reject this contention because the Marysville plant's purpose was to produce synthetic natural gas when sufficient supplies of natural gas were unavailable.

Plaintiff contends that the issue is not whether Marysville gas could have been produced more cheaply, which the PSC considered, but whether any Marysville gas should have been produced at all, since it was unneeded and more expensive than other available supplies. Plaintiff wants ratepayers to be refunded the amount of feedstock costs charged to them during 1978 to 1979 as a result of the Marysville plant's operation.

This appeal is one of several from the "Marysville cases." In another Marysville appeal, we found that the Marysville plant was used and useful in the 1970s. Evidence indicated that there would be a future need for it to produce synthetic natural gas when the "supply bubble" of natural gas available from other sources ended. See *General Motors Corp v PSC No 1,* 175 Mich App 576; — NW2d — (1988).

Plaintiff has failed to carry his burden of showing by clear and satisfactory evidence that the PSC's order is unlawful or unreasonable.

Affirmed.