ATTORNEY GENERAL v PUBLIC SERVICE COMMISSION #1

Docket No. 65918. Submitted February 7, 1984, at Lansing.—Decided April 16, 1984. Leave to appeal applied for.

The Public Service Commission in 1978 indexed an annual rate adjustment for The Detroit Edison Company for operation and maintenance expenses to the National Consumer Price Index. In 1979, 1980, 1981, and 1982, the Public Service Commission issued rate-adjustment orders based on the index created in the 1978 order. The Attorney General appealed the rate-adjustment orders to the Ingham Circuit Court, which affirmed, Robert Holmes Bell, J. The Attorney General appealed. *Held:*

1. All rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the Public Service Commission are deemed, prima facie, to be lawful and reasonable. Any person attacking an order of the Public Service Commission has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. The Public Service Commission has the statutory power to index rate adjustment for operation and maintenance expenses of public utilities to the National Consumer Price Index.

2. The statutory requirement of a full and complete hearing with all relevant factors considered was fulfilled in the hearings establishing the indexing in 1978. Subsequent hearings were merely to apply the indexing formula already established and issue new rate-adjustment orders.

3. The Michigan Public Service Commission is not required to complete a hearing on a petition within nine months of the date of the filing of the petition. The nine-month provision is only a goal, and the only sanction imposed on the commission for failing to meet the nine-month time limit is that the commission report the delay to the Governor and Legislature.

4. The system of indexing rate adjustments employed by the

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 64 Am Jur 2d, Public Utilities §§ 284, 285.
[3] 64 Am Jur 2d, Public Utilities § 240.
[4] 2 Am Jur 2d, Administrative Law § 405.
  64 Am Jur 2d, Public Utilities §§ 266, 267.

Public Service Commission did not constitute an unconstitutional delegation of its rate-setting power.

Affirmed.

1. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — JUDICIAL REVIEW.

All rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the Public Service Commission are deemed, prima facie, to be lawful and reasonable (MCL 462.25; MSA 22.44).

2. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — ORDERS — BURDEN OF PROOF.

Any person attacking an order of the Public Service Commission has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable (MCL 462.26; MSA 22.45).

3. PUBLIC UTILITIES — RATE ADJUSTMENTS — INDEXING — CONSTITUTIONAL LAW.

The Public Service Commission has the statutory power to index rate adjustments for operation and maintenance expenses of public utilities to the National Consumer Price Index; such indexing does not constitute an unconstitutional delegation of rate-setting power (MCL 460.6; MSA 22.13[6]).

4. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — NINE-MONTH RULE.

The Michigan Public Service Commission is not required to complete a hearing on a petition within nine months of the date of the filing of the petition; the nine-month provision is only a goal, and the only sanction imposed on the commission for failing to meet the nine-month time limit is that the commission report the delay to the Governor and Legislature (MCL 460.6a[4]; MSA 22.13[6a][4]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Hugh B. Anderson,* Assistant Attorney General, for plaintiff.

*Don L. Keskey* and *S. David Kutinsky,* Assistants Attorney General, for Public Service Commission.

*Leon S. Cohan, Bruce R. Maters,* and *David L. Clark,* for the Detroit Edison Company.

Before: CYNAR, P.J., and J. H. GILLIS and R. C. ANDERSON,* JJ.

PER CURIAM. The Attorney General appeals as of right from the July 19, 1982, order of Ingham County Circuit Court Judge Robert Holmes Bell which affirmed four Michigan Public Service Commission rate orders issued between January, 1979, and January, 1982, approving certain monthly electric billing adjustments for The Detroit Edison Company pursuant to the "Other Operations and Maintenance Expense Indexing System".

The challenged adjustment procedure was originally proposed so that changes in operation and maintenance expense, excluding fuel, purchased power and production maintenance (other O & M), affect future customer rate levels only to the extent that cost levels change for other retail consumer goods as measured by the National Consumer Price Index.

The indexing system was first established for Detroit Edison in Michigan Public Service Commission Case No. U-5502, by order dated September 28, 1978. This was a comprehensive rate case in which a thorough examination was made of all of Edison's costs and revenue requirements for ratemaking purposes. The order in U-5502 read, in part:

"Staff witness Roger F. Fischer summarized the proposal. After establishing the reasonable level of 'other O & M' expense in this proceeding, the annual rate adjustment would be determined at a December hearing, starting with December 1978. The December hear-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ing would first determine the change in the all-commodities national CPI from September of the prior year through August of the current year. For a hearing in December 1978, the change in the CPI from September 1977 through August 1978 would be calculated. Then the allowable change in 'other O & M' expenses would be determined by multiplying the base amount by the percentage change in the CPI. The original base amount plus the calculated allowable change would then become the new base amount for the next period. Next the hearing would determine the allowable change per kWh by dividing the allowable change by the 12-months' jurisdictional kWh sales first determined in the current proceeding. Annual jurisdictional sales for future annual changes would be determined in future rate cases. The amount of change per kWh would be applied to customers' bills for 12 months starting with the February billing month following the December hearing. Subsequent rate cases would include only the base 'other O & M' expense determined in this proceeding and not any subsequent changes or actual expense amount. The staff's proposal would not bar applicant completely from seeking a change in the indexing system, but would place a substantial burden on applicant to show the necessity for such a change.

\* \* \*

"At present, the commission oversees 'other O & M' expenses by examining general categories of expenditures in the O & M classification. Because of the legal limits on commission power, the traditional focus of regulation, the size and complexity of applicant's operations and the limits of time and resources, the commission and its staff have not superintended the details of 'other O & M' expenses. While any relatively large and patently unreasonable expenses may be identified and acted upon in the present process, apparently reasonable 'other O & M' expenses, whether incurred or projected, are routinely allowed. Because the only cost to applicant of moderate increases in O & M expenses is that which results from regulatory delay, applicant has not had the strong incentive to economize which exists in competitive industries in the private sector. And,

there is no accepted objective standard by which the commission may measure management efficiency.

"The adoption of the staff's proposal would subject applicant's management to pressures for economy which are analogous to the cost pressures which exist in the private sector. If applicant's management were to allow 'other O & M' expenses to increase at a faster rate than the CPI, applicant's stockholders, and not the ratepayers, would pay the bill. If applicant's management were to keep 'other O & M' expenses below the increase in the CPI, then applicant's earnings might be increased.

\* \* \*

"The indexing system as proposed by the staff incorporates generally accepted ratemaking principles, and employs them in a new and imaginative way. Essentially, the indexing system uses recently available historical data on inflation rates as a predictor of future inflation rates, much the same way as regulatory agencies have often used historical costs as a predictor of future costs. Indeed, those who have advocated that the commission use historical rather than projected costs for the purpose of predicting future costs in setting future rates should have no difficulty accepting the principle that historical inflation rates can legitimately be used to predict future inflation rates for the purposes of the indexing system adjustment.

"In practice, the annual increase in the CPI, for example, during the period September 1977 through August 1978 will be ascertained in a December 1978 hearing, and an adjustment will be made in applicant's electric rates commencing in February 1979. The assumption is that the inflation rate from February 1979 through January 1980 will approximate the September 1977 through August 1978 inflation rate, and that over the long run the historical inflation rate will be under as much and as often as over the current rate, so the differences will be roughly off-setting. The indexing system thus proposes to keep the allowance for 'other O & M' expenses current. The purpose is not to compensate applicant in the following year for inflation which

may have been suffered in the previous year. This, arguably, would be retroactive ratemaking.

"For reasons stated above the commission finds that the staff's proposal is reasonable in principle and should be adopted.

\*   \*   \*

"The commission finds that the indexing provision should be implemented beginning in the calendar year 1978. The first hearings should be in December 1978, and hearings should be held in December each year thereafter.

\*   \*   \*

"However, the commission finds that the indexing system established by this order should be subject to alteration on application of applicant or suggestion of the staff or intervening parties. It would not be in the public interest to freeze the systems so adjustments could not be made. The commission is establishing a new program. In most new programs there are 'bugs' which must be eliminated to make the program work properly. In addition, the long-run future is uncertain. The commission simply must have the flexibility to deal directly with unanticipated serious problems. However, where applicant requests a change in the indexing system, applicant will have a heavy burden to demonstrate the necessity of the change.

"Because the indexing system is a new and to some extent an experimental program, the commission finds that there should be a comprehensive evaluation on the indexing system after five years' experience. \* \* \* As a part of the comprehensive evaluation, applicant, the staff, and intervening parties may propose changes in, or even elimination of, the indexing system."

The original order in U-5502 which established the indexing system is not challenged in this appeal. Challenged here are four subsequent orders implementing the adjustment. These orders were issued on January 29, 1979 (Docket U-5502), January 30, 1980 (Docket U-5502), January 30,

1981 (Docket U-6006), and January 26, 1982 (Docket U-6488).

On March 31, 1983, the commission ordered in Docket U-6949 that the indexing plan be discontinued.

The first question raised in this appeal is whether the MPSC acted lawfully and reasonably in granting four annual rate increases to The Detroit Edison Company in 1979-1982 pursuant to this "Other Operations and Maintenance Expense Indexing System".

Appellate review of Public Service Commission orders is narrow in scope. Under MCL 462.25; MSA 22.44, all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the commission are deemed, prima facie, to be lawful and reasonable. *Michigan Consolidated Gas Co v Public Service Comm,* 389 Mich 624; 209 NW2d 210 (1973); *Consumers Power Co v Public Service Comm,* 65 Mich App 73; 237 NW2d 189 (1975); *Attorney General v Public Service Comm,* 122 Mich App 777; 333 NW2d 131, *lv den* 418 Mich 886 (1983). The person attacking an order of the commission must prove by clear and satisfactory evidence that the order complained of is unlawful or unreasonable. MCL 462.26; MSA 22.45; *City of Lansing v Public Service Comm,* 330 Mich 608; 48 NW2d 133 (1951); *Michigan Bell Telephone Co v Public Service Comm,* 85 Mich App 163; 270 NW2d 546 (1978); *Attorney General v Public Service Comm, supra,* pp 796-797.

Although not authorized by specific statute or case law, the establishment of the Other O & M Indexing System appears to fall within the commission's statutory power.

The public service commission act confers broad

discretion and authority upon the Public Service Commission by providing that:

"(1) The public service commission is vested with complete power and jurisdiction to regulate all public utilities in the state except a municipally owned utility, the owner of a renewable resource power production facility as provided in section 6d, and except as otherwise restricted by law. The public service commission is vested with the power and jurisdiction to regulate all rates, fares, fees, charges, services, rules, conditions of service, and all other matters pertaining to the formation, operation, or direction of such public utilities. The public service commission is further granted the power and jurisdiction to hear and pass upon all matters pertaining to, necessary, or incident to the regulation of all public utilities, including electric light and power companies, whether private, corporate, or cooperative, gas companies, water, telephone, telegraph, oil, gas, and pipeline companies, motor carriers, and all public transportation and communication agencies other than railroads and railroad companies." MCL 460.6; MSA 22.13(6).

The purpose of the challenged system was to regulate the rise in other O & M expenses and to provide an incentive for the provider to keep these expenses below the CPI. The system falls within the statute's charge that the commission regulate all charges related to the operation of a public utility. We hold, therefore, that the Other O & M Indexing System falls within the commission's statutory power.

The Attorney General argues that the system is illegal because it fails to comply with § 7 of the electric act which provides, in part:

"In determining the proper price [of electricity], the commission shall consider and give due weight to all lawful elements properly to be considered to enable it

to determine the just and reasonable price to be fixed for supplying electricity, including cost, reasonable return on the fair value of all property used in the service, depreciation, obsolescence, risks of business, value of service to the customer, the connected load, the hours of the day when used and the quantity used each month." MCL 460.557; MSA 22.157.

The Attorney General contends that the indexing system fixes rates while completely ignoring any consideration of the elements specified in the above portion of the statute.

We disagree. Annual rate increases pursuant to the Other O & M Indexing System did not have to be preceded by full and complete hearings such as are held in main rate cases. *Attorney General v Public Service Comm,* 122 Mich App 777; 333 NW2d 131 (1983). The full and complete hearing, as envisioned by the statute, was held prior to the issuance of the order originally establishing the system in 1978. The indexing system was adopted in that context, with all relevant factors being considered. Each subsequent indexing order, which was preceded by notice and hearing, merely applied the formula previously established in the main case to allow recovery of a reasonable amount for other O & M expenses.

We hold, therefore, that the commission can issue valid annual orders allowing rate increases based on the change in the CPI without holding a full and complete hearing each year, as is done in the main rate case, when the single-factor hearing was anticipated and provided for in the principal rate case and order.

The Other O & M Indexing System and the four annual rate increases do not violate the nine-month statute, § 6a(2) of the public service commission act, which provides:

"(2) The commission shall adopt such rules and procedures for the filing, investigation and hearing of petitions or applications to increase or decrease utility rates and charges as the commission finds necessary or appropriate to enable it to reach a final decision with respect to such petitions or applications within a period of 9 months from the filing thereof." MCL 460.6a; MSA 22.13(6a).

As was stated in *Detroit Edison Co v Public Service Comm,* 127 Mich App 499, 508-509; 342 NW2d 273 (1983):

"The nine-month provision of the statute is not a requirement; it is only a goal. The sanction imposed by the statute for noncompliance with the nine-month period is merely that the commission report the delay to the Governor and Legislature. Former MCL 460.6a(3); MSA 22.13(6a)(3), now § 6a(4)."

Contrary to the Attorney General's next argument, the commission did not unconstitutionally delegate its power to the United States Department of Labor, Bureau of Labor Statistics, which issues the Consumer Price Index. The CPI was used in the indexing formula because evidence presented to the commission supported its use as a tool to control these expenses. Further, the commission was free, at any time, to abandon the system. Last, there was notice and a hearing and a specific decision and order by the commission implementing each yearly increase. In no way did the commission abandon its responsibility in this area, thus allowing the Bureau of Labor Statistics to make this decision.

We have examined the Attorney General's remaining allegations of illegalities and find them to be without merit.

Affirmed.