COLONY PARK APARTMENTS v PUBLIC SERVICE COMMISSION

Docket Nos. 81302, 81303, 81304, 81305. Submitted June 17, 1985, at Lansing. Decided December 23, 1985.

Colony Park Apartments and other apartment owners sought review in Ingham Circuit Court of four separate rate orders of the Public Service Commission relating to the proper rate to be charged by The Detroit Edison Company for electrical service to master-metered multiple dwellings. In the first order, made after a full and complete hearing and as part of a 1977 rate increase request by Detroit Edison, the Public Service Commission determined that master-metered multiple-unit dwellings having three or more units should be subject to the commercial rate rather than the residential rate while master-metered duplexes should be subject to the residential rates. The commission based its decision on the fact that multiple-unit dwellings with three or more units tended to use electricity in a different manner than single-family dwellings and duplexes because of the presence in the multi-unit dwellings of coin-operated laundry facilities, large recreational facilities and all-night outdoor lighting, uses not normally found in single-family dwellings and duplexes. That rate structure was extended to include master-metered multi-unit dwellings having electric space heating which had previously been "grandfathered" into the residential rate classification. The commission also refused to change this rate classification in two subsequent hearings on further rate increase requests by Detroit Edison. The circuit court, Jack W. Warren, J., affirmed each of the commission's orders. Plaintiffs appealed.

The Court of Appeals *held:*

1. The commission did not deprive the apartment owners of a fair hearing by refusing in the cases subsequent to the first case to permit reexamination of the rate structure question

REFERENCES

Am Jur 2d, Administrative Law §§ 671 *et seq.*

Am Jur 2d, Parties §§ 54 *et seq.*

Am Jur 2d, Public Utilities §§ 126, 133 *et seq.,* 240.

See the annotations in the Index to Annotations under Class Actions; Public Service Commission; Utilities.

which had been determined after a full hearing in the first case. The full and complete hearing requirement contemplated by the Public Service Commission statute was satisfied by the original hearing. The commission is not required to fully consider the rate structure question every time there is a rate increase petition.

2. The circuit court should have used the "means scrutiny" test to determine whether the rate structure adopted by the commission violated plaintiffs' constitutional right to equal protection of the law. Reversal is not mandated, however, because the circuit court reached the right result for the wrong reason.

3. The "means scrutiny" test is satisfied, since there exists a reasonable relationship between electricity use in master-metered, multi-unit dwellings and the desire to encourage energy conservation practices through individual metering and since it cannot be said the grouping of duplexes with single-family dwellings rather than with multi-unit dwellings having three or more units was unreasonable.

4. Plaintiffs' claim of lack of proper statutory notice is not properly preserved and, in any event, without merit.

5. The circuit court did not err in refusing to grant plaintiffs' motions for certification of a class action, since a class action treatment, absent unusual circumstances, is not available in appeals from Public Service Commission rate orders.

Affirmed.

1. PUBLIC UTILITIES — RATEMAKING — APPEAL — STANDARD OF REVIEW.

Public utility ratemaking, being a function legislative in nature, is not reviewed by the courts on the constitutional standard applicable to findings of fact; rather, courts must defer to the rulemaker's exercise of legislative discretion absent breach of a constitutional standard or a statutory mandate or limitation.

2. PUBLIC UTILITIES — RATEMAKING — HEARINGS — SCOPE OF HEARINGS.

The Public Service Commission, after having determined the rate structure to be applied in a particular circumstance following a full and complete hearing on the matter, does not have to hold a full and complete hearing on the question of the rate structure in its subsequent consideration of cases involving a petition for a rate increase; in the subsequent case the commission may properly limit the scope of the hearing to the specific issue or issues involved in the pending case which were not decided in the principal rate case.

3. CONSTITUTIONAL LAW — EQUAL PROTECTION — PUBLIC SERVICE COMMISSION — MEANS SCRUTINY TEST.

A court reviewing an equal protection challenge to a Public Service Commission rate determination should apply the "means scrutiny" test.

4. APPEAL — RIGHT RESULT FOR WRONG REASON.

The Court of Appeals will not change a correct result reached by a trial court even if the trial court based its determination on the wrong reason.

5. PUBLIC UTILITIES — ELECTRICAL SERVICE — MASTER METERING — MULTI-UNIT APARTMENTS.

A Public Service Commission determination that multi-unit apartment buildings which have more than three units and master metering should purchase their electrical service at commercial rather than residential rates is neither arbitrary nor unreasonable and is not violative of equal protection despite the fact that master-metered duplexes are charged residential rates.

6. ACTIONS — APPEAL — CLASS ACTIONS — PUBLIC SERVICE COMMISSION.

Class action treatment, except under unusual circumstances, is not available in circuit court actions appealing Public Service Commission rate orders, since as a practical matter no party would opt into such a class action since any rate relief secured by such an appeal would apply to the whole class whether or not one was a party to the appeal.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *William C. Whitbeck*), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Don L. Keskey* and *Henry J. Boynton,* Assistant Attorneys General, for the Public Service Commission.

*David L. Clark,* for the Detroit Edison Company.

Before: ALLEN, P.J., and WAHLS and J. P. O'BRIEN,* JJ.

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Plaintiffs appeal as of right orders of the Ingham Circuit Court issued October 1, 1984, Honorable Jack W. Warren presiding, affirming the Public Service Commission's decision to structure The Detroit Edison Company's tariffs so as to include multiple dwellings with three or more units serviced by a master electrical meter in the commercial tariff schedules.

The commission first considered the question of the appropriate rate to be applied to multiple-unit dwellings in Case No. U-5502 (our No. 81302), a case arising out of an August, 1977, petition for rate increase filed by Edison. In that case, the hearing officer's proposal for decision, adopted by the commission, found that such multiple-unit dwellings use electricity in a different manner than single-family dwellings and duplexes, and that such uses were more consistent with a commercial than a residential classification. Among the factors considered were the presence of coin-operated laundry facilities, large recreational facilities, and outdoor lighting used every night, all night—uses not normally found in single-family dwellings and duplexes.

In our No. 81303, the commission merely continued the rate structure adopted previously in the course of authorizing a general rate increase. In our No. 81304, the commission extended the commercial classification to space-heating accounts served by a master meter and involving multiple-unit dwellings, 603 of which had been "grandfathered" into a residential classification. Newer space-heating accounts were being charged at a commercial rate. We note that elimination of such grandfathered rate disparities appears mandated by the nondiscrimination statute, MCL 460.557; MSA 22.157. Finally, in our No. 81305, the commission again was faced with a rate relief request

and refused to tinker with the existing rate structure.

In all cases subsequent to No. U-5502, the commission declined to reexamine the question of rate structure, and instead relied on its previous rate structure decisions as a point of departure in addressing the narrower questions presented in each later case. The various plaintiffs appealed each commission decision to the Ingham Circuit Court pursuant to § 26 of the Public Service Commission act, MCL 462.26; MSA 22.45, seeking class action certification. The circuit court consolidated the appeals, denied class action treatment in each case, and affirmed the commission's decisions.

Plaintiffs ask this Court to indulge in a detailed review of the evidence presented in No. U-5502 regarding rate design. The commission staff and Edison each presented one witness who favored treating multiple-unit master-metered dwellings under a commercial rate, while the plaintiff apartment owners presented a witness who gave contrary testimony.

The issue of rate structure is not one of fact, but of legislation. *Attorney General v Public Service Comm #2,* 136 Mich App 515, 523; 358 NW2d 351 (1984). This Court does not review legislative action for "competent, material and substantial evidence on the whole record," Const 1963, art 6, § 28, but must instead defer to the legislative body, *Sigal v Detroit,* 140 Mich App 39, 44; 362 NW2d 886 (1985), absent breach of a constitutional standard or a statutory mandate or limitation. We have, accordingly, reviewed the records in this case in light of that standard.

Plaintiffs allege that the commission erred and deprived them of a fair hearing by refusing, in cases subsequent to No. U-5502, to permit reexamination of the rate structure question. This Court

has had recent occasion to comment on this type of procedure. As discussed in *Attorney General v Public Service Comm #1,* 133 Mich App 719; 349 NW2d 539 (1984), the commission, in 1978, had adopted an "Other Operations and Maintenance Expense Indexing System" for tracking certain types of expenses and as a means of regulating a rise in such expenses. In subsequent rate cases, the commission refused to "reinvent the wheel" by tinkering with the system or reconsidering its adoption. The Attorney General challenged this practice, contending that the refusal of the commission to reexamine the system in subsequent rate cases was a violation of requirements that it "consider and give due weight to all lawful elements properly to be considered to enable it to determine the just and reasonable price to be fixed for supplying electricity," MCL 460.557; MSA 22.157. This Court held:

> We disagree. Annual rate increases pursuant to the Other O & M Indexing System did not have to be preceded by full and complete hearings such as are held in main rate cases. *Attorney General v Public Service Comm,* 122 Mich App 777; 333 NW2d 131 (1983). The full and complete hearing, as envisioned by the statute, was held prior to the issuance of the order originally establishing the system in 1978. The indexing system was adopted in that context, with all relevant factors being considered. Each subsequent indexing order, which was preceded by notice and hearing, merely applied the formula previously established in the main case to allow recovery of a reasonable amount for other O & M expenses.
>
> We hold, therefore, that the commission can issue valid annual orders allowing rate increases based on the change in the CPI without holding a full and complete hearing each year, as is done in the main rate case, when the single-factor hearing

was anticipated and provided for in the principal rate case and order. [133 Mich App 727.]

Accord *NLRB v Wyman-Gordon Co,* 394 US 759, 765-766; 89 S Ct 1426; 22 L Ed 2d 709 (1969) (Fortas, J.); *Ohio Fast Freight, Inc v United States,* 574 F2d 316, 319 (CA 6, 1978). See also *Safeway Stores, Inc v Federal Trade Comm,* 366 F2d 795 (CA 9, 1966), cert den 386 US 932; 87 S Ct 954; 17 L Ed 2d 805 (1967); *Bd of Co Comm'rs of Shawnee Co v Brookover,* 198 Kan 70; 422 P2d 906 (1967).

Plaintiffs contend that the tariff differentials as adopted by the commission deny them equal protection of the law. Plaintiffs further argue that the court below erred by refusing to apply the "means scrutiny" test articulated in *Alexander v Detroit,* 392 Mich 30; 219 NW2d 41 (1974). We agree that the test in *Alexander* should have been applied but, because the circuit court nevertheless reached the right result for the wrong reason, we affirm. *Thompson v Dep't of Corrections,* 143 Mich App 29; 371 NW2d 472 (1985).

Master metering in multiple-unit apartment buildings is inconsistent with energy conservation: individual meters provide an economic incentive for each tenant to limit his or her consumption of electricity; in contrast, master metering provides no such incentive to tenants, since they pay a flat rental rate. Accordingly, we conclude that the tariff differentials are ·based on natural distinguishing characteristics and bear a reasonable relationship to energy conservation objectives. Thus, the first inquiry of the "means scrutiny" test is satisfied.

Master-metered duplexes are of course not completely distinguishable from complexes of three or more units, and there may be reasons for treating complexes of three or four units like duplexes.

Nevertheless, it is constitutionally permissible to draw a line in a reasonable place, even though arguably the line could be drawn elsewhere with equal facility. See, e.g., *Shavers v Attorney General,* 402 Mich 554, 632; 267 NW2d 72 (1978). It is clear that, because apartment complexes contain more units, more and more facilities which consume more and more electricity become the norm, e.g., hallway and parking area lights, laundry and other common facilities. We do not find that the line drawn by the commission is arbitrary or unreasonable and we conclude that the second inquiry of the "means scrutiny" test is satisfied.

Plaintiffs also contend that the notice issued by the commission in No. 81304 failed to comply with § 6a of the Public Service Commission act MCL 460.6a; MSA 22.13(6a). We doubt whether plaintiffs have standing to raise this issue, since they timely intervened in the proceedings before the commission. Furthermore, we tend to the opinion that this challenge comes too late, since plaintiffs failed to make a timely attempt to point out defects in the notice, which would have allowed the commission to amend the notice seasonably, but waited to raise the issue until they appealed to circuit court.

In any event, since we find no merit in any of the substantive issues presented and are affirming the commission's rate structure design as adopted, any defect in the notice was harmless error. Nevertheless, we have examined the notice and find that it adequately apprised interested ratepayers that a petition was pending before the commission which might lead to a rate increase affecting them and that, if they wished to protect their rights, they should file an intervention petition in timely fashion.

Finally, plaintiffs contend that the circuit court

erred in denying their motions for class action certification. Plaintiffs ask this Court to apply GCR 1963, 208, as amended effective April 1, 1983. Since, however, the rule amendments changed class actions in Michigan from the "opt in" format, *Grigg v Michigan National Bank,* 405 Mich 148; 274 NW2d 752 (1979), to an "opt out" format, GCR 208.1(C) and 208.3(E)(2) [now carried forward in MCR 3.501(A)(3) and 3.501(C)(5)(b)], full application of the amended rule "would not be feasible or would work injustice." MCR 1.102 and order of the Supreme Court dated December 29, 1982, implementing amended rule 208, 417 Mich cxxxiii. Nonetheless, the amended rule does set forth the relevant criteria for determining whether to grant or deny a motion to certify a class action.

In statutory appeals of Public Service Commission rate determinations, any relief accorded in terms of refunds must, of necessity, apply to the entire class, MCL 460.557; MSA 22.157, and plaintiffs, if successful, may not only tax their costs, but also are entitled to have the reasonable fees and expenses of their attorneys paid out of the refund pool. *Jones v O'Donnell,* 292 Mich 189; 290 NW2d 375 (1940); *Aetna Casualty & Surety Co v Starkey,* 116 Mich App 640; 323 NW2d 325 (1982). Class action certification would serve no practical purpose. Where, as here, the appeal is determined to be without merit both by the appellate court of first instance and by this Court on further review, no economically rational member of the affected class would opt into the lawsuit, and all would certainly opt out given proper notice explaining the consequences of participation. Therefore, absent unusual circumstances not here present, we agree with the circuit court that class action treatment is not available in Public Service Commission appeals.

Affirmed.