ASSOCIATION OF BUSINESSES ADVOCATING TARIFF EQUITY v
PUBLIC SERVICE COMMISSION

Docket No. 143186. Submitted December 14, 1993, at Lansing. De-
cided May 17, 1994, at 9:25 a.m. Leave to appeal sought.

The Association of Businesses Advocating Tariff Equity (ABATE)
filed a complaint in the Public Service Commission, alleging
that the electric rates of Consumers Power Company were
unjust and unreasonable. The PSC directed Consumers to file an
electric rate case. Several parties, including the Michigan
Community Agency Action Association, intervened. In reducing
Consumers' electric rates, the PSC allowed Consumers to charge
as expenses $34,678,000 annually for ten years as partial
recoupment of its investment in the failed nuclear plant at
Midland and $10,689,000 annually for ten years as recoupment
for a $63 million investment over two years in demand-side
management programs. Consumers, the PSC staff, and other
interested parties subsequently entered into an agreement
concerning the implementation of demand-side management
programs, an increase or decrease in Consumers' permitted
return on equity depending on the implementation of such
programs, and refund to customers should Consumers not fully
use amounts approved for such programs. Demand-side man-
agement programs involve the planning and implementation of
activities designed to influence customer use of electricity to
affect the pattern and magnitude of use and may include such
measures as incentives to encourage use when demand is not at
its peak and generation of electricity by customers. ABATE
appealed.

The Court of Appeals *held:*

1. ABATE does not have standing to challenge the PSC's
authority to order Consumers to implement demand-side man-
agement programs because ABATE has not shown that it is
detrimentally affected in a manner different from the citizenry
at large. In any event, the issue is moot inasmuch as Consum-
ers voluntarily agreed to implement demand-side management
programs, and the manner in which the PSC required Consum-
ers to implement such programs was consistent with the PSC's
authority to establish reasonable rates and charges and did not
encroach upon Consumers' ultimate managerial authority.

2. ABATE's challenges to incentives and disincentives for

Consumers' implementation of demand-side management programs and refunds to customers in the event that Consumers does not fully invest amounts approved for such programs are not ripe for review. In any event, the incentives, disincentives, and refunds do not constitute control of Consumers' managerial decision making or retroactive rate making.

3. ABATE's request under MCL 462.10(g); MSA 22.29(g) for a refund for a period of up to two years before its complaint for Consumers' "overcharges" was properly denied by the PSC because such a refund would constitute retroactive rate making of the sort prohibited by *Michigan Bell Telephone Co v Public Service Comm*, 315 Mich 533 (1946).

4. Contrary to ABATE's claims, the PSC opinions and orders in this case were sufficiently detailed to allow meaningful appellate review, and the PSC lacked statutory authority to grant interim rate relief pending its decision of this case. Finally, the propriety of allowing Consumers to recoup part of its investment in the Midland plant through expense charges is the subject of a separate appeal and need not be addressed in this case.

Affirmed.

*Hill Lewis* (by *Robert A.W. Strong, Timothy P. Collins,* and *Joseph R. Assenzo*), for Association of Businesses Advocating Tariff Equity.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Don L. Keskey* and *Philip J. Rosewarne,* Assistant Attorneys General, for the Public Service Commission.

*David A. Mikelonis* and *Jon R. Robinson,* and *Loomis, Ewert, Ederer, Parsley, Davis & Gotting, P.C.* (by *Harvey J. Messing* and *Ronald W. Bloomberg*), for Consumers Power Company.

*Ralls Urban & Rosier, P.C.* (by *William Reid Ralls* and *Bruce H. Edwards*), for Michigan Community Agency Action Association.

Before: GRIBBS, P.J., and HOLBROOK, JR., and
J. D. PAYANT,* JJ.

PER CURIAM. The Association of Businesses Advocating Tariff Equity (ABATE) appeals as of right from May 7 and July 1, 1991, opinions and orders of the Public Service Commission (PSC). Finding no error, we affirm.

I

On October 27, 1988, ABATE filed a complaint and motion to show cause, alleging that Consumers Power Company's electric rates were unjust and unreasonable. On March 30, 1989, the PSC issued an order directing Consumers to file an electric rate case, docketed as No. U-9346. Various parties intervened.

On May 7, 1991, the PSC issued a 154-page opinion and order resulting in a net reduction in Consumers' retail electric rates of $44,574,000 annually. In setting Consumers' rates, the PSC allowed several new expense items: $34,678,000 annually for ten years as partial recoupment of Consumers' investment in its failed Midland nuclear generating plant, less a penalty for violating conditions attached to stabilization rate relief, as required by PSC decisions of the same date in case Nos. U-7830 Step 3B and Step 3A, respectively; and $10,689,000 annually for new demand-side management (DSM) programs. The PSC denied ABATE's request for refund of all excess rate charges for the period beginning two years before the filing of ABATE's complaint until the date of the PSC's final order.

Various parties filed petitions for rehearing or reconsideration. On July 1, 1991, the PSC issued its

* Circuit judge, sitting on the Court of Appeals by assignment.

opinion and order granting in part and denying in part the petitions. Although the July 1, 1991, order required Consumers to implement additional rate reductions totaling $28,168,000 annually, the PSC largely denied the requests for relief. This appeal followed.

## II

### A

DSM may be defined as the planning and implementation of activities designed to influence customer use of electricity in ways that will produce changes in the time pattern and magnitude of a utility's load. DSM programs may include conservation measures, incentives to encourage customers to utilize electricity during off-peak periods, and customer generation of electricity.

The PSC agreed with its staff that DSM offers the possibility of cost-effective alternatives to supply-side resources, for example the building of new generating plants, for meeting the demand for electric services. Noting that the issue had been raised as early as August 1980, the PSC determined the issue was ripe for consideration and that Consumers should consider implementing DSM programs. Although the precise features of the programs were left for negotiation between Consumers, the PSC staff and other interested parties, the PSC found that it would be prudent for Consumers to invest $63 million over the next two years in DSM programs. The PSC found that the cost of the programs should be capitalized, and it authorized Consumers to increase its rates to collect $10,689,-000 a year for ten years to recoup the investment. If Consumers should spend less than expected on the initial investment, the PSC held that Consumers should refund the difference collected from the

ratepayers during the initial two-year period. If Consumers should spend more, it would be allowed to capitalize the excess for recovery in the next rate case. To provide Consumers an incentive to pursue aggressive and worthwhile DSM programs, the PSC set certain goals and authorized Consumers to adjust upward by one percentage point its rate of return on common equity if the goals are achieved, or face a two percentage point downward adjustment in its rate of return if the goals are not met.

B

ABATE argues that the PSC is without authority to order Consumers to implement DSM programs or to raise its electrical rates to fund such programs. ABATE relies on *Union Carbide Corp v Public Service Comm,* 431 Mich 135, 149-150; 428 NW2d 322 (1988), in which the Supreme Court held that the PSC acted properly in preventing Consumers from passing on to ratepayers any additional fuel expenses incurred while operating certain oil-fired generating units, but that the PSC exceeded its authority to regulate a utility's rates and charges when it ordered Consumers to cease operating the oil-fired units. The Court held that the PSC is strictly a creature of statute and that the PSC could point to no statute giving it the authority it claimed to possess in that case. Similarly, ABATE argues that the PSC here exceeded its jurisdiction to regulate rates, charges, and conditions of service when it in effect made managerial decisions on behalf of Consumers.

We agree with the PSC that ABATE does not have standing to raise this issue. ABATE does not claim that the PSC has wrongly calculated a rate increase, or that the cost of DSM programs are an

improper expense to include in a utility's rate base. Rather, ABATE contends that it is improper for the PSC to order a utility to adopt DSM programs. Because it does not appear that ABATE can show that it is detrimentally affected by the PSC's order in a manner different from the citizenry at large, it does not have standing to raise this issue. *House Speaker v State Administrative Bd,* 441 Mich 547, 554; 495 NW2d 539 (1993).

Moreover, it appears the issue is moot. On September 25, 1991, the PSC approved a settlement agreement whereby Consumers, the PSC staff, and other parties agreed that Consumers will implement DSM programs costing approximately $63 million over two years, in exchange for capitalizing the expense over a ten-year period and adjustments to its return on equity as an incentive to meet agreed upon targets.[1] Therefore, even if this Court were to agree with ABATE that the PSC has no authority to order Consumers to implement DSM programs, this Court could provide no relief because Consumers has voluntarily agreed to implement such programs under the very conditions that ABATE finds objectionable.

Finally, were we to reach the merits, we would hold that the PSC did not overstep the bounds of its authority. The PSC informed Consumers of its opinion that the time was ripe to implement DSM programs and outlined the conditions under which the costs of such programs would be approved, leaving to Consumers the choice of whether and how to implement such programs. The PSC's actions are consistent with its authority to establish reasonable rates and charges and did not encroach upon the ultimate managerial authority of the

---

[1] Although ABATE indicated no substantive objection to the terms of the settlement agreement, it specifically refused to join the settlement because of its concerns regarding the scope of the PSC's authority.

utility. *Consumers Power v Public Service Comm,*
189 Mich App 151, 179-180; 472 NW2d 77 (1991).
We would reject ABATE's argument that the PSC
may not approve the recovery of the reasonable
costs of DSM programs because the only statute
authorizing approval of energy conservation pro-
grams, MCL 460.6c; MSA 22.13(6c), is limited to
residential ratepayers. We do not believe that this
statute limits the PSC's authority to approve utility
rates that reflect the reasonable costs of meeting
energy needs, whether the costs are incurred by
managing demand or by increasing supply.

c

In the event that Consumers fails to invest the
full authorized sum in DSM programs, the PSC's
May 7, 1991, order and the subsequent settlement
agreement provide that Consumers will refund
with interest the excess rates collected. In addi-
tion, the order and settlement provide incentives
and disincentives to Consumers for meeting DSM
goals.

ABATE contends that both mechanisms are im-
proper because they are indirect attempts to do
what *Union Carbide* holds the PSC cannot do di-
rectly, i.e., control Consumers' managerial decision
making. ABATE also contends that a refund of
amounts not spent on DSM programs would
amount to retroactive rate making in violation of
*Michigan Bell Telephone Co v Public Service
Comm,* 315 Mich 533, 545-547; 24 NW2d 200
(1946).

We agree with Consumers and the Michigan
Community Agency Action Association (MCAAA)
that these issues are not ripe for review. It is mere
speculation that the PSC will order Consumers to
refund any monies or adjust Consumers' rate of

return. Moreover, we hold for the reasons given above that ABATE does not have standing to raise these issues, and that they are in any event moot in light of Consumers' subsequent agreement to abide by these conditions.

Were we to reach the merits, we would once again hold that ABATE has failed to show any error. This Court reviews PSC decisions to determine whether they are lawful and reasonable. It is an appellant's burden to show by clear and satisfactory evidence that the PSC's order is unlawful or unreasonable. This Court gives due deference to the PSC's administrative expertise and will not substitute its judgment for that of the PSC. *CMS Energy Corp v Attorney General,* 190 Mich App 220, 228; 475 NW2d 451 (1991). Setting rates and fashioning rate structures are legislative and not judicial or quasi-judicial acts. This Court therefore does not review PSC rate decisions under the substantial evidence test, but instead defers to the PSC absent breach of a constitutional standard or statutory mandate or limitation. *Colony Park Apts v Public Service Comm,* 155 Mich App 134, 138; 399 NW2d 32 (1985).

ABATE has not shown that the PSC's conditional approval of a rate increase for DSM program spending is unlawful or unreasonable. Conditional rate making, whereby the PSC authorizes a utility to collect rates based on certain expenditures subject to refund if the total expenditure is not made, is not the same as retroactive rate making, whereby the PSC after the fact determines that unconditionally approved rates are excessive. The PSC may lawfully condition rate levels on external factors, such as the Consumer Price Index, or impose a charge structure that contains incentives or disincentives. *Attorney General v PSC No 1,* 133 Mich App 719, 727-728; 349 NW2d 539 (1984); *Attorney*

*General v Public Service Comm No 2,* 133 Mich
App 790, 797; 350 NW2d 320 (1984).

D

ABATE contends that § 10(g) of the railroad act,
MCL 462.10(g); MSA 22.29(g), authorizes the PSC to
investigate the complaint ABATE filed and empow-
ers the PSC to order a refund for a period up to two
years before the date of the complaint. Section
10(g) provides:

> Within 2 years after the delivery of any ship-
> ment of freight at destination, and not after, any
> person aggrieved may complain to the commission
> that the charge exacted for the transportation of
> such freight between points in Michigan is irregu-
> lar or exorbitant, and thereupon the commission
> shall have the power to investigate such com-
> plaint, and to hear the same and to decide upon
> the merits thereof, in the manner provided by § 22
> of this act. If, upon such hearing, the commission
> shall decide that the rate or charge exacted is
> irregular or exorbitant, it shall find what, in its
> judgment, would have been a reasonable rate or
> charge for the service complained of. If the rate or
> charge so found shall be less than the charge
> exacted and the commission shall determine that
> any party complainant is entitled to an award of
> damages under the provisions of this act for viola-
> tion thereof, the commission shall make an order
> authorizing and directing the carrier to pay the
> complainant the sum to which he is entitled on or
> before a day named. In case of the refusal of the
> carrier to make such refund, the party aggrieved
> thereby may maintain an action in the courts of
> this state to recover the amount of such excessive
> charge as found by said commission, and in the
> trial thereof the findings of the commission shall
> be prima facie evidence of the truth of the facts
> found by it, and no carrier shall be permitted to
> avail itself in the defense of such action that the

shipment involved was in fact made on the published tariff rate in force at the time such shipment was made, but no carrier making a refund upon the order of the commission pursuant to a judgment of court as herein provided, shall be liable for any penalty or forfeiture, or subject to any prosecution under the laws of this state on account of making such refund.

In denying ABATE's request for a two-year refund, the PSC relied on *Michigan Bell, supra,* which prohibits retroactive rate making. ABATE contends that such reliance is misplaced because the Supreme Court expressly stated that § 10(g) was "not applicable to the instant case" and so was not considered. 315 Mich 553.

The PSC and Consumers admit that the PSC has acquired the powers and duties of the former railroad commission. *Union Carbide, supra* at 155-156. However, they contend that it is naive to suppose that every power and duty granted to the former railroad commission can be carried over and applied in an analogous fashion to other utilities. In particular, they argue that § 10(g) cannot be applied in the instant case because the statute is concerned only with claims regarding rates charged by common carriers in excess of their filed rates. The parties claim that the railroad commission did not preapprove tariffs; instead, common carriers would file schedules of charges, which were subject to investigation for their reasonableness by the railroad commission on its own initiative or on the filing of a complaint by an aggrieved person. Under such circumstances, these parties contend that it would be appropriate for the railroad commission to retroactively order a refund for excessive rates. However, Consumers' prior rates were approved by the PSC, and so they con-

tend that § 10(g) cannot be simply carried over and applied to this case.

We find it unnecessary to reach the larger question posed by the PSC and Consumers regarding the present scope and applicability of § 10(g), because we reject ABATE's argument that *Michigan Bell* is distinguishable. In that case, the Supreme Court rejected just the sort of argument ABATE makes here:

> In *Detroit & M R Co v Michigan Railroad Commission,* 171 Mich 335, 346, this Court referring to rate-fixing orders of the Michigan railroad commission said: "Its orders stand until modified or set aside by it or by the courts." We cannot accept appellant's contention that the public service commission, in consequence of there having vested in it the former powers of the Michigan railroad commission, may make a retroactive rate order. Nor are we in accord with the assertion in appellant's first brief, but seemingly abandoned in its supplemental brief:
>
> If the rules concerning railroad rates are to be applied to telephone rates, then it would follow that as to telephone rates the commission would have the power to award damages for past *overcharges.*
>
> That conclusion is not applicable to the instant case because in a correct sense "overcharges" are not here involved. Instead the telephone company's charges were in accord with the existing lawfully established rates for the services rendered. [Emphasis in original. 315 Mich 546.]

Similarly, in the instant case Consumers was charging rates approved by the PSC during the period from the filing of ABATE's complaint in October 1988 until the PSC's 1991 order. Therefore, the PSC may not retroactively adjust those rates by ordering Consumers to make the refunds ABATE wishes.

E

We reject ABATE's contention that the PSC's opinions and orders are deficient because they fail to specify with adequate detail the PSC's findings and conclusions. The opinions are sufficiently detailed to allow meaningful appellate review, and ABATE has not shown that it has been prejudiced in any way by the opinions' alleged deficiencies.

We likewise find without merit ABATE's contention that the PSC should have granted interim relief or should have accelerated the decision in this case. Absent statutory authority, the PSC cannot grant interim rate reductions without violating the rule against retroactive rate making. We find no evidence in the record that the PSC or Consumers improperly delayed a decision in this case. Indeed, there is evidence that the PSC took steps to expedite a decision by dispensing with the normal procedure whereby a hearing referee issues a proposal for decision. It appears from the record that most of the time lapse in this case was caused by "regulatory lag," i.e., the unfortunately long time necessary for the parties to marshal the evidence and for the PSC to review the evidence and render a decision. Although regulatory lag may have worked against ratepayers in this case, it can also work against utilities.

Finally, ABATE notes that the rates established by the PSC's May 7, 1991, order are based in part on the $34,668,000 Consumers is permitted to recover annually from ratepayers over a ten-year period for its investment in the failed Midland nuclear generating plant. Although ABATE claims this is error, ABATE admits that the propriety of allowing such a recovery is the subject of separate appeals in consolidated Docket Nos. 141277,

141284, 142199 and 142493. We therefore express no opinion regarding the merits of this claim.
  Affirmed.