205 Mich. App. 383 (1994)
522 N.W.2d 140
ASSOCIATION OF BUSINESSES ADVOCATING TARIFF EQUITY
v.
PUBLIC SERVICE COMMISSION
Docket No. 143186.
Michigan Court of Appeals.
Submitted December 14, 1993, at Lansing.
Decided May 17, 1994, at 9:25 a.m.
Hill Lewis (by Robert A.W. Strong, Timothy P. Collins, and Joseph R. Assenzo), for Association of Businesses Advocating Tariff Equity.
Frank J. Kelley, Attorney General, Thomas L. Casey, Solicitor General, and Don L. Keskey and Philip J. Rosewarne, Assistant Attorneys General, for the Public Service Commission.
David A. Mikelonis and Jon R. Robinson, and Loomis, Ewert, Ederer, Parsley, Davis & Gotting, P.C. (by Harvey J. Messing and Ronald W. Bloomberg), for Consumers Power Company.
Ralls Urban & Rosier, P.C. (by William Reid Ralls and Bruce H. Edwards), for Michigan Community Agency Action Association.
*385 Before: GRIBBS, P.J., and HOLBROOK, JR., and J.D. PAYANT,[*] JJ.
PER CURIAM.
The Association of Businesses Advocating Tariff Equity (ABATE) appeals as of right from May 7 and July 1, 1991, opinions and orders of the Public Service Commission (PSC). Finding no error, we affirm.
I
On October 27, 1988, ABATE filed a complaint and motion to show cause, alleging that Consumers Power Company's electric rates were unjust and unreasonable. On March 30, 1989, the PSC issued an order directing Consumers to file an electric rate case, docketed as No. U-9346. Various parties intervened.
On May 7, 1991, the PSC issued a 154-page opinion and order resulting in a net reduction in Consumers' retail electric rates of $44,574,000 annually. In setting Consumers' rates, the PSC allowed several new expense items: $34,678,000 annually for ten years as partial recoupment of Consumers' investment in its failed Midland nuclear generating plant, less a penalty for violating conditions attached to stabilization rate relief, as required by PSC decisions of the same date in case Nos. U-7830 Step 3B and Step 3A, respectively; and $10,689,000 annually for new demand-side management (DSM) programs. The PSC denied ABATE's request for refund of all excess rate charges for the period beginning two years before the filing of ABATE's complaint until the date of the PSC's final order.
Various parties filed petitions for rehearing or reconsideration. On July 1, 1991, the PSC issued its *386 opinion and order granting in part and denying in part the petitions. Although the July 1, 1991, order required Consumers to implement additional rate reductions totaling $28,168,000 annually, the PSC largely denied the requests for relief. This appeal followed.
II
A
DSM may be defined as the planning and implementation of activities designed to influence customer use of electricity in ways that will produce changes in the time pattern and magnitude of a utility's load. DSM programs may include conservation measures, incentives to encourage customers to utilize electricity during off-peak periods, and customer generation of electricity.
The PSC agreed with its staff that DSM offers the possibility of cost-effective alternatives to supplyside resources, for example the building of new generating plants, for meeting the demand for electric services. Noting that the issue had been raised as early as August 1980, the PSC determined the issue was ripe for consideration and that Consumers should consider implementing DSM programs. Although the precise features of the programs were left for negotiation between Consumers, the PSC staff and other interested parties, the PSC found that it would be prudent for Consumers to invest $63 million over the next two years in DSM programs. The PSC found that the cost of the programs should be capitalized, and it authorized Consumers to increase its rates to collect $10,689,000 a year for ten years to recoup the investment. If Consumers should spend less than expected on the initial investment, the PSC held that Consumers should refund the difference collected from the *387 ratepayers during the initial two-year period. If Consumers should spend more, it would be allowed to capitalize the excess for recovery in the next rate case. To provide Consumers an incentive to pursue aggressive and worthwhile DSM programs, the PSC set certain goals and authorized Consumers to adjust upward by one percentage point its rate of return on common equity if the goals are achieved, or face a two percentage point downward adjustment in its rate of return if the goals are not met.
B
ABATE argues that the PSC is without authority to order Consumers to implement DSM programs or to raise its electrical rates to fund such programs. ABATE relies on Union Carbide Corp v Public Service Comm, 431 Mich 135, 149-150; 428 NW2d 322 (1988), in which the Supreme Court held that the PSC acted properly in preventing Consumers from passing on to ratepayers any additional fuel expenses incurred while operating certain oil-fired generating units, but that the PSC exceeded its authority to regulate a utility's rates and charges when it ordered Consumers to cease operating the oil-fired units. The Court held that the PSC is strictly a creature of statute and that the PSC could point to no statute giving it the authority it claimed to possess in that case. Similarly, ABATE argues that the PSC here exceeded its jurisdiction to regulate rates, charges, and conditions of service when it in effect made managerial decisions on behalf of Consumers.
We agree with the PSC that ABATE does not have standing to raise this issue. ABATE does not claim that the PSC has wrongly calculated a rate increase, or that the cost of DSM programs are an *388 improper expense to include in a utility's rate base. Rather, ABATE contends that it is improper for the PSC to order a utility to adopt DSM programs. Because it does not appear that ABATE can show that it is detrimentally affected by the PSC's order in a manner different from the citizenry at large, it does not have standing to raise this issue. House Speaker v State Administrative Bd, 441 Mich 547, 554; 495 NW2d 539 (1993).
Moreover, it appears the issue is moot. On September 25, 1991, the PSC approved a settlement agreement whereby Consumers, the PSC staff, and other parties agreed that Consumers will implement DSM programs costing approximately $63 million over two years, in exchange for capitalizing the expense over a ten-year period and adjustments to its return on equity as an incentive to meet agreed upon targets.[1] Therefore, even if this Court were to agree with ABATE that the PSC has no authority to order Consumers to implement DSM programs, this Court could provide no relief because Consumers has voluntarily agreed to implement such programs under the very conditions that ABATE finds objectionable.
Finally, were we to reach the merits, we would hold that the PSC did not overstep the bounds of its authority. The PSC informed Consumers of its opinion that the time was ripe to implement DSM programs and outlined the conditions under which the costs of such programs would be approved, leaving to Consumers the choice of whether and how to implement such programs. The PSC's actions are consistent with its authority to establish reasonable rates and charges and did not encroach upon the ultimate managerial authority of the *389 utility. Consumers Power v Public Service Comm, 189 Mich App 151, 179-180; 472 NW2d 77 (1991). We would reject ABATE's argument that the PSC may not approve the recovery of the reasonable costs of DSM programs because the only statute authorizing approval of energy conservation programs, MCL 460.6c; MSA 22.13(6c), is limited to residential ratepayers. We do not believe that this statute limits the PSC's authority to approve utility rates that reflect the reasonable costs of meeting energy needs, whether the costs are incurred by managing demand or by increasing supply.
C
In the event that Consumers fails to invest the full authorized sum in DSM programs, the PSC's May 7, 1991, order and the subsequent settlement agreement provide that Consumers will refund with interest the excess rates collected. In addition, the order and settlement provide incentives and disincentives to Consumers for meeting DSM goals.
ABATE contends that both mechanisms are improper because they are indirect attempts to do what Union Carbide holds the PSC cannot do directly, i.e., control Consumers' managerial decision making. ABATE also contends that a refund of amounts not spent on DSM programs would amount to retroactive rate making in violation of Michigan Bell Telephone Co v Public Service Comm, 315 Mich 533, 545-547; 24 NW2d 200 (1946).
We agree with Consumers and the Michigan Community Agency Action Association (MCAAA) that these issues are not ripe for review. It is mere speculation that the PSC will order Consumers to refund any monies or adjust Consumers' rate of *390 return. Moreover, we hold for the reasons given above that ABATE does not have standing to raise these issues, and that they are in any event moot in light of Consumers' subsequent agreement to abide by these conditions.
Were we to reach the merits, we would once again hold that ABATE has failed to show any error. This Court reviews PSC decisions to determine whether they are lawful and reasonable. It is an appellant's burden to show by clear and satisfactory evidence that the PSC's order is unlawful or unreasonable. This Court gives due deference to the PSC's administrative expertise and will not substitute its judgment for that of the PSC. CMS Energy Corp v Attorney General, 190 Mich App 220, 228; 475 NW2d 451 (1991). Setting rates and fashioning rate structures are legislative and not judicial or quasi-judicial acts. This Court therefore does not review PSC rate decisions under the substantial evidence test, but instead defers to the PSC absent breach of a constitutional standard or statutory mandate or limitation. Colony Park Apts v Public Service Comm, 155 Mich App 134, 138; 399 NW2d 32 (1985).
ABATE has not shown that the PSC's conditional approval of a rate increase for DSM program spending is unlawful or unreasonable. Conditional rate making, whereby the PSC authorizes a utility to collect rates based on certain expenditures subject to refund if the total expenditure is not made, is not the same as retroactive rate making, whereby the PSC after the fact determines that unconditionally approved rates are excessive. The PSC may lawfully condition rate levels on external factors, such as the Consumer Price Index, or impose a charge structure that contains incentives or disincentives. Attorney General v PSC No 1, 133 Mich App 719, 727-728; 349 NW2d 539 (1984); Attorney *391 General v Public Service Comm No 2, 133 Mich App 790, 797; 350 NW2d 320 (1984).
D
ABATE contends that § 10(g) of the railroad act, MCL 462.10(g); MSA 22.29(g), authorizes the PSC to investigate the complaint ABATE filed and empowers the PSC to order a refund for a period up to two years before the date of the complaint. Section 10(g) provides:
Within 2 years after the delivery of any shipment of freight at destination, and not after, any person aggrieved may complain to the commission that the charge exacted for the transportation of such freight between points in Michigan is irregular or exorbitant, and thereupon the commission shall have the power to investigate such complaint, and to hear the same and to decide upon the merits thereof, in the manner provided by § 22 of this act. If, upon such hearing, the commission shall decide that the rate or charge exacted is irregular or exorbitant, it shall find what, in its judgment, would have been a reasonable rate or charge for the service complained of. If the rate or charge so found shall be less than the charge exacted and the commission shall determine that any party complainant is entitled to an award of damages under the provisions of this act for violation thereof, the commission shall make an order authorizing and directing the carrier to pay the complainant the sum to which he is entitled on or before a day named. In case of the refusal of the carrier to make such refund, the party aggrieved thereby may maintain an action in the courts of this state to recover the amount of such excessive charge as found by said commission, and in the trial thereof the findings of the commission shall be prima facie evidence of the truth of the facts found by it, and no carrier shall be permitted to avail itself in the defense of such action that the *392 shipment involved was in fact made on the published tariff rate in force at the time such shipment was made, but no carrier making a refund upon the order of the commission pursuant to a judgment of court as herein provided, shall be liable for any penalty or forfeiture, or subject to any prosecution under the laws of this state on account of making such refund.
In denying ABATE's request for a two-year refund, the PSC relied on Michigan Bell, supra, which prohibits retroactive rate making. ABATE contends that such reliance is misplaced because the Supreme Court expressly stated that § 10(g) was "not applicable to the instant case" and so was not considered. 315 Mich 553.
The PSC and Consumers admit that the PSC has acquired the powers and duties of the former railroad commission. Union Carbide, supra at 155-156. However, they contend that it is naive to suppose that every power and duty granted to the former railroad commission can be carried over and applied in an analogous fashion to other utilities. In particular, they argue that § 10(g) cannot be applied in the instant case because the statute is concerned only with claims regarding rates charged by common carriers in excess of their filed rates. The parties claim that the railroad commission did not preapprove tariffs; instead, common carriers would file schedules of charges, which were subject to investigation for their reasonableness by the railroad commission on its own initiative or on the filing of a complaint by an aggrieved person. Under such circumstances, these parties contend that it would be appropriate for the railroad commission to retroactively order a refund for excessive rates. However, Consumers' prior rates were approved by the PSC, and so they contend *393 that § 10(g) cannot be simply carried over and applied to this case.
We find it unnecessary to reach the larger question posed by the PSC and Consumers regarding the present scope and applicability of § 10(g), because we reject ABATE's argument that Michigan Bell is distinguishable. In that case, the Supreme Court rejected just the sort of argument ABATE makes here:
In Detroit & M R Co v Michigan Railroad Commission, 171 Mich 335, 346, this Court referring to rate-fixing orders of the Michigan railroad commission said: "Its orders stand until modified or set aside by it or by the courts." We cannot accept appellant's contention that the public service commission, in consequence of there having vested in it the former powers of the Michigan railroad commission, may make a retroactive rate order. Nor are we in accord with the assertion in appellant's first brief, but seemingly abandoned in its supplemental brief:
If the rules concerning railroad rates are to be applied to telephone rates, then it would follow that as to telephone rates the commission would have the power to award damages for past overcharges.

That conclusion is not applicable to the instant case because in a correct sense "overcharges" are not here involved. Instead the telephone company's charges were in accord with the existing lawfully established rates for the services rendered. [Emphasis in original. 315 Mich 546.]
Similarly, in the instant case Consumers was charging rates approved by the PSC during the period from the filing of ABATE's complaint in October 1988 until the PSC's 1991 order. Therefore, the PSC may not retroactively adjust those rates by ordering Consumers to make the refunds ABATE wishes.
*394 E
We reject ABATE's contention that the PSC's opinions and orders are deficient because they fail to specify with adequate detail the PSC's findings and conclusions. The opinions are sufficiently detailed to allow meaningful appellate review, and ABATE has not shown that it has been prejudiced in any way by the opinions' alleged deficiencies.
We likewise find without merit ABATE's contention that the PSC should have granted interim relief or should have accelerated the decision in this case. Absent statutory authority, the PSC cannot grant interim rate reductions without violating the rule against retroactive rate making. We find no evidence in the record that the PSC or Consumers improperly delayed a decision in this case. Indeed, there is evidence that the PSC took steps to expedite a decision by dispensing with the normal procedure whereby a hearing referee issues a proposal for decision. It appears from the record that most of the time lapse in this case was caused by "regulatory lag," i.e., the unfortunately long time necessary for the parties to marshal the evidence and for the PSC to review the evidence and render a decision. Although regulatory lag may have worked against ratepayers in this case, it can also work against utilities.
Finally, ABATE notes that the rates established by the PSC's May 7, 1991, order are based in part on the $34,668,000 Consumers is permitted to recover annually from ratepayers over a ten-year period for its investment in the failed Midland nuclear generating plant. Although ABATE claims this is error, ABATE admits that the propriety of allowing such a recovery is the subject of separate appeals in consolidated Docket Nos. 141277, *395 141284, 142199 and 142493. We therefore express no opinion regarding the merits of this claim.
Affirmed.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.
[1] Although ABATE indicated no substantive objection to the terms of the settlement agreement, it specifically refused to join the settlement because of its concerns regarding the scope of the PSC's authority.